UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JOSEPH P. LALLY,                    )
                                    )
        Petitioner,                 )
                                    )
            v.                      )    Civil Action No. 13-10401-JCB
                                    )
CHAD FULTZ and                      )
FRANK G. COUSINS, JR.,              )
                                    )
        Respondents.                )
_____)

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
[Docket No. 1]

April 5, 2013

Boal, M.J.

The petitioner, Joseph P. Lally ("Lally" or "Petitioner") is a federal prisoner currently in prerelease custody pursuant to 18 U.S.C. § 3624(c)(1) at the Lawrence Correctional Alternative Center ("CAC") in Lawrence, Massachusetts. He has brought a petition under 28 U.S.C. § 2241 challenging a 27-day loss of good conduct time imposed when a Discipline Hearing Officer at FMC Devens found him to have threatened a staff member on January 13, 2012. He seeks restoration of the 27 days of good conduct time, thereby advancing his release date to April 9, 2013. Respondents Frank G. Cousins, Jr. and Chad Fultz[1] (collectively, the "Respondents")

---

[1] Respondents correctly maintain that the proper respondent is Frank G. Cousins, Jr. as the Sheriff of Essex County only, because he was, at the time the petition was filed, Petitioner's custodian. Docket No. 10 at 1 n. 1. See Rumsfeld v. Padilla, 542 U.S. 426, 439 (2004) (in habeas petitions, the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent). In any event, the Court denies the Petition on the merits.

request that the Court deny Lally's request for relief.  For the following reasons, this Court denies the Petition.

I.        PROCEDURAL AND FACTUAL BACKGROUND

On October 19, 2011, Lally was sentenced to eighteen months in federal prison following his conviction for conspiracy, honest services mail fraud, and honest services wire fraud. Petition, ¶ 3; see also United States v. Joseph P. Lally, No. 09-cr-10166-MLW.  He began serving his sentence on December 12, 2011.  Petition, ¶ 5.

On or about January 13, 2012, Lally was housed at FMC Devens.  Id.  On that date, Lally requested to speak with Correctional Officer Oliveira when he was in the recreation cage. Petition, ¶ 6.  Lally believed that Officer Oliveira potentially endangered his safety by telling other inmates that Lally was an informant.  Id.  Lally's and Officer Oliveira's accounts of the events of that day differ.  Lally alleges that he told Oliveira that he had heard that Oliveira was talking with other inmates about his cooperation with the government in his case thereby putting his safety in jeopardy and asked Oliveira to stop.  Id.  Lally added that he was about to see his attorney and would discuss the matter with him.  Id.  Lally alleges that he was at all times within the caged area and Oliveira outside the caged area and thus the two were separated by a chain link fence.  Id.  He also alleges that there were no raised voices.  Id.

Oliveira, on the other hand, described the incident as follows:

> At approximately 0920 hours on 13 Jan. 2012, while conducting outside recreation duties in Special Housing Unit (SHU), inmate Lally #27369-038 asked to speak to me.  I asked him what his issue was and he stated, "is your name Oliveira?"  I asked why he needed this information.  He went on to say that he heard that I was talking about his court case.  To that I answered, "no I haven't." He then told me that, "I am aware that you have a family.  I have an army of attorneys and could make things difficult for you and ruin your career."  I went on to state to inmate Lally that his case is common knowledge and in the media and

> again stated that I had not spoken about his case.  He reiterated to me that, "I am just telling you that I can ruin you if I want to."  I then stated that our conversation was over and I walked away to conduct my recreation duties.  Soon after my dealings with inmate Lally he was nitified (sic) he had a visit and he exited his recreation cage with staff and went to the visiting room for a visit.  Note: During my conversation with inmate Lally #27369-038 I did feel threatened due to this words/threats.

Petition, ¶ 11 and Ex. A.

In the early evening of January 13, 2012, a staff member gave Lally a copy of an Incident Report regarding the events of that day with Officer Oliveira.  Petition, ¶ 10.  The Incident Report characterized Lally's exchange with Officer Oliveira as a "Prohibited Act Code Violation 203," specifically "[t]hreatening another with bodily harm or any other offense."  Id. and Ex. A.

After Lally received the Incident Report, the staff member advised him of his rights to remain silent and that the staff member was investigating the matter reported.  Petition, ¶ 12.  Lally denied Officer Oliveira's allegations but acknowledged that he advised Oliveira that he had heard he was talking with other inmates about his case which involved cooperation with the government; that he was putting Lally's safety in jeopardy; that if he was doing so he should stop; and that he, Lally, was about to see his attorney and would discuss the matter with him.  Id.  Lally added that he was willing to take a lie detector test.  Id.

On January 18, 2012, the investigator again contacted Lally and gave him a copy of the completed Incident Report.  Petition, ¶¶ 15-16 and Ex. B.  At that time, the investigator asked Lally to sign a few forms, including a Notice of Discipline Hearing before the Disciplinary Hearing Officer ("DHO") and Inmate Rights at Discipline Hearing.  Petition, ¶ 16 and Exs. C

and D. The completed Incident Report indicated that the matter was to be referred to the DHO.[2] Petition, ¶ 16 and Ex. C.

Later on January 18, 2012, Lally was summoned to a DHO hearing. Petition, ¶ 18. Lally had a staff representative at the hearing. Petition, ¶ 19. Officer Oliveira did not attend the hearing. Id. Lally asked the DHO to call two witnesses on his behalf. Id. The DHO honored his request for the two witnesses and cross-examined them. Id. Lally was not permitted to ask questions of the witnesses. Id. Lally also told the DHO that video surveillance of the cage area would confirm his statements but the DHO refused to obtain and view the video surveillance. Id.

After the hearing, the DHO told Lally that he found against him and stated that the sanctions were loss of visiting and telephone privileges for three months. Petition, ¶ 20.

The DHO prepared a Discipline Hearing Officer Report. Petition, ¶ 20. Lally received a copy of the written report on February 13, 2012. Petition, ¶ 22. A corrected DHO Report was dated and re-issued on February 27, 2012, which included an additional sanction of loss of 27 days of good time credit.[3] Id. and Ex. E. Lally exhausted his administrative remedies. Petition, ¶ 24.

Lally filed his Petition on February 28, 2013. Docket No. 1. On March 25, 2013, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge for all purposes. Docket No. 11. Respondents filed their response and opposition on March 25, 2013.

---

[2] Pursuant to 28 C.F.R. § 541.7(a)(4), where, as here, an inmate is charged with a 200 series High Level Prohibited Act, the Unit Disciplinary Committee will automatically refer the incident report to the DHO for further review.

[3] Pursuant to 28 C.F.R. § 541.4(b)(2), a loss of good conduct time is mandatory for series 200 offenses.

Docket No. 10.  Lally filed a reply on April 1, 2013.

II.     DISCUSSION

Respondents argue that Lally's Petition should be denied because he received due process and the DHO's decision was supported by the requisite degree of evidence.  Docket No. 10 at 4-8.  This Court agrees.

   A.     Jurisdiction

Pursuant to 28 U.S.C. § 2241, a federal prisoner may attack the execution of his sentence in the district where he is incarcerated.  United States v. Glantz, 884 F.2d 1483, 1489 (1st Cir. 1989).  A petition challenging the loss of good conduct time credits is a challenge to the execution of the petitioner's sentence.  Queen v. Miner, 530 F.3d 253, 255 n. 2 (3rd Cir. 2008).  As such, Lally's challenge to the disciplinary procedures that deprived him of good time credits is within this Court's Section 2241 jurisdiction.

   B.     Standard Of Review

The Bureau of Prisons disciplinary process is fully outlined in the Code of Federal Regulations.  These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates or attempts to violate institutional rules.  The first step in the disciplinary process requires the filing of an incident report and an official investigation pursuant to 28 C.F.R. § 541.5.  Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for review pursuant to 28 C.F.R. § 541.7.  Where, as here, the alleged violation involves a prohibited act listed in the series 200 High Severity Level Prohibited Acts, the UDC must refer the matter to the DHO for a hearing.  28 C.F.R. § 541.7(a)(4).

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court

recognized that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 557. Nevertheless, the Supreme Court recognized that the Due Process Clause provides for certain minimum protections for inmates facing the loss of good time credits as a disciplinary sanction. The loss of good time credit undoubtedly threatens an inmate's prospective freedom from confinement by extending the length of imprisonment. Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985). The prisoner therefore has a strong interest in assuring that the loss of good time credit is not imposed arbitrarily. This interest, however, must accommodate the distinctive prison. Id. Accordingly, the Supreme Court held that when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Smith v. Massachusetts Dep't of Correction, 936 F.2d 1390, 1398 (1st Cir. 1991) (quoting Superintendent, 472 U.S. at 454).

"Wolff and its progeny make clear that the rights of prisoners facing disciplinary proceedings are limited by the competing concerns of maintaining institutional safety and other correctional goals." Id. at 1499. "Prison officials must have the necessary discretion to keep [a disciplinary hearing] within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Id. (quoting Wolff, 418 U.S. at 566). Confrontation and cross-examination are not constitutionally required in disciplinary

proceedings except in a narrow range of cases. Id. While the discretion of prison officials in such matters is broad, it is subject to judicial review for abuse. Id.

### C. Lally Was Afforded Due Process

The disciplinary proceedings against Lally comported with the due process requirements of Wolff. Lally received advance written notice of the charges against him (see Petition, ¶¶ 10-11); on Lally's request, the DHO called two witnesses on his behalf (see Petition, ¶ 19); and Lally received a written report and a corrected written report, stating the reasons for the DHO's finding and discipline (see Petition, ¶ 22).

Lally appears to argue that the receipt of the completed Incident Report on January 18, 2012, the same day of the disciplinary hearing, violated Wolff's requirement that a minimum of 24 hours be afforded to allow the inmate to review the notice of the charges before commencing a hearing. See Petition, ¶ 18. Lally, however, has admitted that he received the initial Incident Report that identified the charges against him on January 13, 2012, five days before the hearing.[4] See Petition, ¶ 12. To the extent that Lally is arguing that he did not have 24-hour notice of the hearing, federal law does not require advance notice of the hearing. "It requires only that inmates be given written notice of the *charges* against them at least 24 hours before the disciplinary hearing." Figueroa v. Vose, 57 F.3d 1061, 1995 WL 352819, at *1 (1st Cir. June 13, 1995) (citing Wolff, 418 U.S. at 564) (unpublished opinion).[5]

---

[4] The description of the charges found in the initial Incident Report is identical to the description contained in the completed Incident Report. Compare Ex. A, ¶ 11 with Ex. B, ¶ 11.

[5] Acknowledging the First Circuit's decision in Figueroa, Lally states that he "does not contend that there must be 24 hour notice 'of a hearing,' but rather that once it is determined that there will in fact be a hearing, it may not commence for at least 24 hours." Docket No. 14 at 12 n. 19. It is not clear what distinction Lally is attempting to make. In any event, Lally received

Lally also appears to argue that his inability to ask questions of the witnesses, the fact that the DHO did not review the video surveillance of the incident, and that his staff representative "was useless" violated his due process.  See Petition, ¶ 19, Docket No. 14 at 12-13.  However, under Wolff, Lally has no right to cross-examination, no right to counsel, and his right to have full access to all the evidence is left to the discretion of prison officials.  See Langton v. Berman, 667 F.2d 231, 235 (1st Cir. 1981); Felton v. Lincoln, 429 F. Supp. 2d 226, 242 (D. Mass. 2006); see also Harvey v. Wilson, No. 6:10-CV-235-GFVT, 2011 WL 1740141, at *10 (E.D. Ky. May 5, 2011) ("[C]ourts that have addressed claims from prisoners who have challenged a DHO's exclusion of, or failure to independently review, the video tape of a contested incident have concluded that the DHO decision not to review video tape evidence does not constitute a denial of due process under Hill and Wolff.") (collecting cases).

Finally, to the extent that Lally argues that delayed receipt of the DHO's written report violated 28 C.F.R. § 541.8(h) requiring receipt of  "a written copy of the DHO's decision following the hearing," any such violation does not entitle him to habeas relief, so long as the delay has no prejudicial effect on his administrative remedies.[6]  See Harvey v. Wilson, 2011 WL 1740141 at *8.  Here, although there were initial procedural issues regarding the timeliness of Lally's appeal, those issues were resolved in his favor and Lally was able to exhaust his administrative remedies.  See Petition, ¶ 24.  Accordingly, Lally is not entitled to habeas relief on that basis.

---

notice of the charges well in advance of the hearing and the evidence was not affected by the timing allegations.  The DHO called Lally's two witnesses.

[6] Lally does not make this argument in his reply to the government's opposition to his Petition, but because it is contained in the Petition itself, the Court addresses it.

D.     The DHO's Determination Was Supported By The Requisite Degree of Evidence

In Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court set out the constitutionally sufficient evidentiary standard applicable to courts reviewing prison disciplinary decisions.  Due process requires that the disciplinary decision be supported by "some evidence."  Id. at 455.  "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .'"  Id. (citation omitted).  "Ascertaining whether this standard is satisfied dos not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Id. at 455-456 (citations omitted).

Here, "some evidence" supports the DHO's finding that Lally committed the prohibited act of threatening a staff member with "any other offense."  Although Lally discounts the evidence relied upon by the DHO (see Petition, ¶ 20), Officer Oliveira's description of the incident is sufficient to meet the "some evidence" standard.  A "report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence,' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker."  Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008).  Here, Officer Oliveira's report was based on personal knowledge and set forth specific facts describing the incident.  Thus, even if the DHO relied on no other evidence, the report is enough to support the disciplinary finding that Lally threatened Officer Oliveira.

Lally also argues that even taking Officer Oliveira's description of the incident as accurate, there is no evidence of a threat of bodily harm and no evidence of "any other offense."

Petition, ¶ 26; Docket No. 14 at 5-7.  He argues that [t]hreatening to take legal action that might affect a person's career is hardly an 'offense' of any kind," but is rather First Amendment protected speech.[7]  Petition, ¶ 26.  This Court disagrees.  Based on Officer Olivera's account, the DHO found that Lally threatened Officer Oliveira's career when Lally said that he was aware Officer Oliveira had a family and informed him that he had an army of attorneys and could make things difficult for him and ruin his career.  See Docket No. 1-5 at 4.  The DHO further found that when Officer Oliveira informed Lally that he was not talking about Lally's case, Lally continued his threatening statements by saying that he could ruin him if he wanted to.  If, as Lally argues, he was simply stating that he was considering his legal options, there would be no reason to mention Officer Oliveira's family or to threaten his career.  See, e.g., Stanko v. Obama, 434 Fed. Appx. 63, 66-67 (3rd Cir. 2011) (finding some evidence supported DHO's finding that prisoner had threatened a staff member with any other offense when he made a threat to file a lien against the staff member) (unpublished opinion).  Accordingly, the Court finds that there is some evidence in the record that Lally threatened Officer Oliveira with any other offense.[8]

---

[7] Although the First Amendment applies, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Morgan v. Quarterman, 570 F.3d 663, 666 (5th Cir. 2009) (citations omitted).  Accordingly, "[i]n the First Amendment context, a prisoner retains only those rights 'that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Id.

[8] To the extent that Lally argues that, as applied to him, Section 203 is constitutionally void as vague and overbroad, see Docket No. 14 at 7, the Court disagrees.  "We have long 'rejected the view that the degree of specificity required of [prison] regulations is as strict in every instance as that required of ordinary criminal sanctions." Estrada v. Williamson, 240 Fed. Appx. 493, 494 (3rd Cir. 2007) (quoting Meyers v. Alldredge, 492 F.2d 296, 310 (3rd Cir. 1974)) (rejecting argument that Section 203 is unconstitutionally vague).  "Prisoners, unlike free men, must well know that they are considered potentially dangerous men and must expect to be highly regimented.  In such cases the law requires less in the way of notice, and places a greater

Finally, to the extent that Lally objects to the DHO's findings regarding credibility, such credibility determinations are properly made by the DHO and are not subject to judicial review. See Griffin v. Winn, No. 01-40151, 2002 WL 378427, at *4 (D. Mass. Mar. 12, 2002) (citation omitted) (emphasis in original) ("So long as *some evidence* in the record supports the factfinder's decision, the factfinder's resolution of factual disputes, including credibility disputes between witnesses, is binding and final."); Ferreira v. Dubois, 963 F. Supp. 1244, 1254 (D. Mass. 1996) ("It was therefore within the discretion of [the hearing officer] not to believe the testimony of 'the inmate witnesses.'").

III.   CONCLUSION

Because Lally was afforded due process and the disciplinary sanction against him was supported by some evidence, his petition for habeas corpus is denied.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

burden on the individual to make inquiry or ask permission before acting." Id. (citations omitted).